# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-504-FDW

| | |
|---|---|
| ANTONIO MOSLEY, ) | |
| a/k/a/ ABDULLAH HAMID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| TORRE JESSUP, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. Nos. 1, 4). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 7).

## I. BACKGROUND

*Pro se* Plaintiff, who is incarcerated at the Bennettsville Correctional Institution in Bennettsville, South Carolina,[1] has filed a civil rights suit pursuant to 42 U.S.C. § 1983.[2] The Complaint is now before the Court on initial review.

Plaintiff names as the sole Defendant Commissioner of the North Carolina Division of Motor Vehicles ("DMV"), Torre Jessup, in his official capacity. Plaintiff argues that North Carolina General Statutes § 24.24-1, and DMV's enforcement of it, violate due process and equal protection.

Construing the Complaint liberally and accepting the allegations as true, a North Carolina

---

[1] According to the Federal Bureau of Prisons' website, Plaintiff's current address is at the RMM Raleigh field office. Plaintiff is cautioned that it is his responsibility to keep the Court apprised of changes of address at all times. Failure to do so may result in this case's dismissal for lack of prosecution.

[2] Plaintiff subsequently filed a similar case in the Eastern District of North Carolina which is presently pending. See Mosley v. Jessup, 5:18-cv-3281.

1

court imposed $300 in fines and court costs on Plaintiff following a September 2, 2011, traffic citation. There was no hearing about Plaintiff's ability to pay fines and costs before the fines and costs were imposed. Plaintiff contacted the Department of Transportation about having his driver's license reinstated and was told that his only option was to pay any late fees and costs in full. Plaintiff, who was by this point incarcerated in a federal correctional institution, paid more than $300 in fines and costs from his prison pay. However, his license is still indefinitely revoked and will remain so until he pays DMV a $65 restoration fee and $50 service fee which he is unable to afford.

Plaintiff is scheduled to be released from prison following a seven-year sentence. He is homeless, unemployed, and indigent. He will need transportation to find a job, travel to work, and take care of family obligations. He also intends to enroll in truck driving school to obtain a commercial driver's license. Plaintiff fears that he will be unable to carry out any of these activities until his driver's license is reinstated. He argues that North Carolina is largely rural, has a large number of impoverished citizens, and lacks widely available public transit. He claims that the automatic revocation of licenses occurs without a pre-deprivation hearing on the driver's ability to pay and whether non-payment was willful, fails to provide sufficient notice of the opportunity to be heard, and disproportionately burdens impoverished North Carolina citizens.

Plaintiff asks the Court to certify two classes: individuals whose driver's licenses have already been revoked, and those whose licenses will be revoked in future, due to the failure to pay fines and penalties.

Plaintiff seeks declaratory relief, injunctive relief, costs and fees, and such other relief as the Court deems just and equitable.

## II. PENDING MOTIONS

Plaintiff seeks certification of two classes, a "future revocations" class that he seeks to represent, and a "revoked class" that will be represented by "Ms. Smoot."[3] (Doc. No. 1 at 26). He also seeks the appointment of counsel to represent the class. His motions will be denied.

The Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); see also Hafner v. Office of Thrift Supervision, 977 F.2d 572 (4th Cir. 1992). Nor can Plaintiff seek class certification on behalf of Ms. Smoot. She is not a party to this case and, as a *pro se* litigant, Plaintiff is unable to seek relief on behalf of others. See Hafner, 977 F.2d at at 572 (*pro se* non-lawyer is "barred from representing anyone other than himself.")(unpublished).

Plaintiff seeks the appointment of counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. However, Rule 23(g) presumes that, in the typical class action, the court will be approving the appointment of counsel who has previously applied for such appointment. See Tyler v. Chavis, 2018 WL 2084619 at *4 (D.S.C. March 8, 2018), *report and recommendation adopted*, 2018 WL 2011526. No lawyer has applied for appointment in this case and Plaintiff has failed to demonstrate that the appointment of counsel is warranted. See Fowler v. Lee, 18 Fed. Appx. 164 (4th Cir. 2001); Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987) (only "exceptional circumstances" warrant the appointment of counsel); see, e.g., Tyler, 2018 WL 2084619 (denying *pro se* prisoner's motion for class certification and for the appointment of counsel).

Therefore, the motions for class certification and for the appointment of counsel that are

---

[3] Plaintiff's reference to Ms. Smoot, and a great deal of the Complaint, appear to be borrowed from a case pending in the Middle District of North Carolina in which several plaintiffs, including Sharee Smoot, have sought certification of a class action with regards to the constitutionality of N.C.G.S. § 20-24.1. See Johnson v. Jessup, 1:18-cv-467.

incorporated in the Complaint will be denied.

### III. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal

civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The Due Process Clause applies to the deprivation of a driver's license by the state because they involve "important interests of the licensees" and thus they "are not to be taken without the procedural due process required by the Fourteenth Amendment." Dixon v. Love, 431 U.S. 105, 112 (1977) (quoting Bell v. Burson, 402 U.S. 535, 539 (1971)).

The essence of a procedural due process is that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" Dusenbery v. United States, 534 U.S. 161, 167 (2002) (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993)). The extent of process due depends on the nature of the property interest, the government's interest, and the risk of an erroneous deprivation. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "[T]o state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him …, unless those processes are … patently inadequate." Manion v. N.C. Med. Bd., 693 Fed. Appx. 178, 181 (4th

5

Cir. 2017) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

The substantive component of due process "bar[s] certain government actions regardless of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). Substantive due process is "far narrower in scope" than procedural due process. Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). State deprivation of a protected property interest violates substantive due process only if it is "so arbitrary and irrational, so unjustified by any circumstance or government interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or adequate rectification by any post-deprivation state remedies." Siena Corp. v. Mayor and City Council of Rockville, Md., 873 F.3d 456, 465 (4th Cir. 2017). The state action must be "conscience shocking, in a constitutional sense." Id.; see Sacramento v. Lewis, 523 U.S. 833, 847 (1998), *abrogated on other grounds by* Saucier v. Katz, 533 U.S. 194 (2001).

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). To state a cognizable claim for the denial of equal protection, a plaintiff must allege discriminatory intent as well as disparate impact. In other words, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrisson v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a

6

rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993).

The North Carolina statute at issue provides that DMV "must" revoke a driver's license upon receipt of notice from a court that the person "was charged with a motor vehicle offense and he … failed to pay a fine, penalty, or court costs ordered by the court." N.C.G.S. § 20-24.1(a)(2). A license revoked under § 20-24.1 remains revoked until the person "pays the penalty, fine, or costs ordered by the court; or … demonstrates to the court that his failure to pay the penalty, fine, or costs was not willful and that he is making a good faith effort to pay or that the penalty, fine, or costs should be remitted." N.C.G.S. § 20-24.1(b)(3)-(4). Upon receipt of notice from the court that a person has satisfied these conditions, DMV "must" restore the person's license without requiring payment of a restoration fee if the person satisfies the conditions before the effective date of the restoration order. N.C.G.S. § 20-24.1(c). However, if the person satisfies the conditions after the effective date of the revocation order, the person must pay the restoration fee and satisfy any other applicable requirements of the statute before the person may be relicensed. Id.

Plaintiff appears to allege that he received inadequate notice and opportunity to be heard and that the North Carolina statute has burdened him unfairly based on his impoverishment. He has stated plausible due process and equal protection claims and, therefore, the Complaint will be permitted to proceed.

### IV. CONCLUSION

For the reasons stated herein, the Complaint has passed initial review but Plaintiff's motions for class certification and the appointment of counsel are denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint survives initial review under 28 U.S.C. § 1915.

2. The motions for class certification and for the appointment of counsel that are incorporated in the Complaint are **DENIED**.

3. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and return for service of process on Defendant. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendant. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

4. The Clerk of Court is instructed to mail a copy of this Order to his address of record as well as to the Federal Bureau of Prisons' RMM Raleigh field office.

Signed: October 29, 2018

_____
Frank D. Whitney
Chief United States District Judge