UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-504-FDW

| ANTONIO MOSLEY,[1] | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| TORRE JESSUP, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant Jessup's Motion to Dismiss, (Doc. No. 24).

## I. BACKGROUND

*Pro se* Plaintiff filed a Complaint while he was incarcerated at the Federal Correctional Institution at Bennettsville, South Carolina.[2] Plaintiff alleged that North Carolina General Statutes § 20.24-1 addressing driver's license revocations, and the Department of Motor Vehicles' ("DMV") enforcement of it, violate due process and equal protection. The Complaint passed frivolity review pursuant to 28 U.S.C. § 1915 and Defendant Jessup was served. See (Doc. No. 8). Defendant has now filed the instant Motion to Dismiss.

**(1)** **Complaint**

Plaintiff names as the sole Defendant Commissioner of the North Carolina DMV, Torre Jessup, in his official capacity. Plaintiff argues that North Carolina General Statutes § 20.24-1, and DMV's enforcement of it, violate due process and equal protection.

---

[1] A/K/A Abdullah Hamid.
[2] Plaintiff was cautioned about the importance of keeping the Court apprised of his current address. (Doc. No. 8 at 1). He is now, apparently, out of custody. See (Doc. No. 18).

1

Construing the Complaint liberally and accepting the allegations as true, a North Carolina court imposed $300 in fines and court costs on Plaintiff following a September 2, 2011, traffic citation. There was no hearing about Plaintiff's ability to pay fines and costs before the fines and costs were imposed. Plaintiff contacted the Department of Transportation about having his driver's license reinstated and was told that his only option was to pay any late fees and costs in full. Plaintiff, who was by this point incarcerated in a federal correctional institution, paid more than $300 in fines and costs from his prison pay. However, his license is still indefinitely revoked and will remain so until he pays DMV a $65 restoration fee and $50 service fee which he is unable to afford.

Plaintiff is scheduled to be released from prison following a seven-year sentence. He is homeless, unemployed, and indigent. He will need transportation to find a job, travel to work, and take care of family obligations. He also intends to enroll in truck driving school to obtain a commercial driver's license. Plaintiff fears that he will be unable to carry out any of these activities until his driver's license is reinstated. He argues that North Carolina is largely rural, has a large number of impoverished citizens, and lacks widely available public transit. He claims that the automatic revocation of licenses occurs without a pre-deprivation hearing on the driver's ability to pay and whether non-payment was willful, fails to provide sufficient notice of the opportunity to be heard, and disproportionately burdens impoverished North Carolina citizens.

Plaintiff seeks declaratory relief, injunctive relief, costs and fees, and such other relief as the Court deems just and equitable.

**(2)** **Motion to Dismiss**

Defendant Jessup argues that the Complaint should be dismissed for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine because the "injury" he raises is predicated on

2

state court judgments over which he seeks review in federal court. D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Moreover, Plaintiff seeks to place the responsibility for holding an "ability to pay hearing" on the DMV whereas fines and costs are ordered to be paid by the court. Plaintiff lacks standing to raise claims under N.C. Gen. Stat. § 20-24.1 because there is no allegation in the Complaint that Plaintiff did not have the ability to pay the fines and costs when they were assessed, and he admits that he paid the fines and costs out of his prison earnings.

Defendant Jessup further argues that the his claim is barred by the Eleventh Amendment under Ex parte Young, 209 U.S. 123 (1908), because a declaration that a state officer violated federal law in the past is not permitted and, insofar as the DMV Commissioner plays any role in the revocation or suspension of driver's licenses pursuant to § 20-24.1, it arises merely from the DMV's general authority to enforce state law by performing the perfunctory duty of noting the revocation of driver's licenses in their database when criminal defendants fail to comply with presumably valid state court orders within the time prescribed by the court.

The Complaint fails to state a claim for which relief can be granted because Plaintiff seeks injunctive relief to prohibit DMV from revoking drivers' licenses for non-payment and mandate that DMV lift current license revocations. However, the state courts issue revocation orders under § 20-24.1 and the DMV Commissioner is not the decision-maker regarding revocation and has no authority to question the assessment of statutory reinstatement and service fees under §§ 20-7(i1) and 20-48.

Finally, Defendant argues that Plaintiff's license revocation does not involve fundamental rights and §§ 20-24.1, 20-7(i1) and 20-48 are constitutionally valid under rational basis review.

**(3)** **Plaintiff's Response**

After Defendant Jessup filed the instant Motion to Dismiss, the Court informed *pro se* Plaintiff of the importance of responding pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 26). Plaintiff has failed to respond.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com., Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor does a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

## III. DISCUSSION

**(1) Subject-Matter Jurisdiction**

The Rooker-Feldman doctrine establishes that the federal courts, except for the United States Supreme Court, do not have appellate jurisdiction over a litigant's challenge to a state court decision, including challenges alleging the state court's action was unconstitutional. This includes claims raised before the state court as well as claims that are inextricably entwined with state court determinations. Feldman, 460 U.S. at 482. However, state administrative and executive actions are

not covered by the doctrine. See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n. 3 (2002) ("[T]he [Rooker–Feldman] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency"). State administrative decisions, even those that are subject to judicial review by state courts, are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress. Thana v. Bd. of License Commissioners for Charles Cty., Md., 827 F.3d 314, 320–21 (4th Cir. 2016).

Defendant Jessup argues, and Plaintiff does not dispute, that Plaintiff was assessed fines, penalties, and/or court costs by the court and that the court, not DMV, ordered that the fines and costs be paid. Plaintiff's alleged injuries were therefore "caused by the state-court judgments" which Plaintiff impermissibly asks the Court to review. See Plyler v. Moore, 129 F.3d 728, 733 (4th Cir. 1997). Plaintiff also lacks standing to challenge § 20-24.1 because Plaintiff had the funds to pay, and did pay, the fines and costs that were assessed under the statute.

The Court finds that Plaintiff lacks standing over this matter and therefore Defendant Jessup's Motion to Dismiss will be granted on this ground.

**(2)** **Sovereign Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Neither a State nor its officials acting in the official capacities are "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, civil rights suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159,

169 (1985).

Ex parte Young, 209 U.S. 123 (1908), provides an exception to Eleventh Amendment immunity for ongoing violations of federal law and for which the relief is properly characterized as prospective. Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 255 (2011). The Ex parte Young exception is narrow. "It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past … and has no application to suits against the States and their agencies, which are barred regardless of the relief sought…." Puerto Rico Acqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993); see also Wicomio Nursing Home v. Padilla, 910 F.3d 739 (4th Cir. 2018) (retrospective damages are not permitted).

Plaintiff has named Defendant Jessup in his official capacity and seeks retrospective review of actions taken by the DMV pursuant to state law in compliance with state court orders. Plaintiff's claims do not fall within the Ex parte Young exception and therefore his claims are barred by sovereign immunity. Defendant Jessup's Motion to Dismiss on the basis of sovereign immunity will be granted.

**(3)** **Failure to State a Claim**

Defendant Jessup argues, and Plaintiff does not contest, that DMV has no authority or means for determining the ability of individuals whose licenses have been revoked to pay the penalty fine or costs ordered by the court, or that the DMV Commissioner lacks the authority to question the reinstatement and service fees under §§ 20-7(i1) and 20-48 by granting hearings for those who assert they are unable to pay. As the DMV lacks the authority to provide the injunctive relief that Plaintiff requests, it is unavailable and thus the Complaint fails to state a claim for which relief can be granted. Defendant Jessup's Motion to Dismiss will therefore be granted because

Plaintiff has failed to state a claim upon which relief can be granted.

**(4)** **Rational Basis Review**

Plaintiff attacks the constitutionality of the North Carolina statutes at issue, § 20-24.1,[3] 20-7(i1),[4] and 20-48,[5] because they are violating his substantial interest in having a driver's license.

Although Plaintiff alleges that he has a substantial interest in his driver's license, having a driver's license is not a fundamental right. See Montgomery v. N.C. Dep't of Motor Vehicles, 455 F.Supp. 338, 342 (W.D.N.C. 1978) (the right to drive is not constitutionally fundamental and the revocation of a license is not the deprivation of a fundamental constitutional right); Mullins v. Commonwealth of Va., 2007 WL 120835 (W.D. Va. Jan. 9, 2007) (although a driver's license is a property right, the right to drive is not fundamental), *aff'd* 599 F.2d 1048 (4th Cir. 1979) (table). Therefore, rational basis review applies and the statutes pass constitutional scrutiny if they are rationally related to a state interest. Wilkins v. Gaddy, 734 F.3d 344, 347 (4th Cir. 2013); Giarratano v. Johnson, 521 F.3d 298, 302-03 (4th Cir. 2008). Rational basis review requires only a "constitutionally minimal level or rationality…." Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 295 (4th Cir. 2007). A statute is constitutional if there is a "'reasonable fit' between governmental purpose … and the means chosen to advance that purpose." Reno v. Flores, 507 U.S. 282, 305 (1993). A state has no obligation to produce evidence to sustain the rationality of a statutory classification. See Heller v. Doe, 509 U.S. 312, 320 (1993).

---

[3] "The Division must revoke the driver's license of a person upon receipt of notice from a court that the person was charged with a motor vehicle offense and he: … failed to pay a fine, penalty, or court costs ordered by the court." N.C. Gen. Stat. § 20-24.1(a)(2). A license revoked under § 20-24.1 remains revoked until the person whose license was revoked … "pays the penalty, fine, or costs ordered by the court; or demonstrates to the court that his failure to pay the penalty, fine, or costs was not willful and that he is making a good faith effort to pay or that the penalty, fine, or costs should be remitted." N.C. Gen. Stat. § 20-24.1(b)(3)-(4).

[4] Any person whose drivers license has been revoked … shall pay a restoration fee of sixty-five dollars ($65.00)…. The fee shall be paid to the Division prior to the issuance to such person of a new drivers license or the restoration of the drivers license. The restoration fee shall be paid to the Division in addition to any and all fees which may be provided by law." N.C. Gen. Stat. § 20-7(i1).

[5] The fee for service of a revocation notice by personal delivery is $50. N.C. Gen. Stat. § 20-48(c).

Defendant argues that imposing a motivation to accomplish what an individual might otherwise be disinclined to do, *i.e.*, pay money to the courts, is rationally related to legitimate government purposes. The Court agrees. The Supreme Court has found that it is fundamentally unfair to incarcerate an individual who is unable to pay fines or debts and acknowledged that the state is not powerless to enforce judgments and has alternative means to ensure that fines are paid. See Bearden v. Georgia, 461 U.S. 660, 671 (1983). Statutes similar to those at issue have been found to be rationally related to a legitimate government interest and the Court concludes that the North Carolina statutes at issue likewise satisfy that standard. See, e.g., Eunique v. Powell, 302 F.3d 971, 974 (9th Cir. 2002) (statute authorizing the denial of a passport for individuals in arrears on child support payments "easily passes" the rational basis test); Mendoza v. Garrett, 2018 WL 6528011 (D. Or. Dec. 12, 2018) (Oregon driver's license suspension statutes for the nonpayment of traffic debts are reasonably related to the state's legitimate interest in enforcing fines for violating traffic laws). Cf. Thomas v. Haslam, 329 F.Supp. 3d 475 (M.D. Tenn. 2018) (revocation of indigent drivers' licenses for failure to timely pay court debts without inquiry into the drivers' ability to pay was not rationally related to a legitimate interest of the state), *appeal filed* July 27, 2018.

The North Carolina statutes are rationally related to the legitimate interest in having court debts paid. Defendant Jessup's Motion to Dismiss will be granted.

**IV.     CONCLUSION**

For the reasons stated herein, Defendant Jessup's Motion to Dismiss will be granted.

**IT IS THEREFORE ORDERED** that:

(1) Defendant Jessup's Motion to Dismiss, (Doc. No. 24), is **GRANTED.**

(2) The Clerk of Court is instructed to close this case.

Signed: March 4, 2019

Frank D. Whitney
Chief United States District Judge